# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN CAPUTO, | Case No. 1:15-cv-01008-EPG (PC) |
| Plaintiff, | ORDER DENYING DEFENDANT BLACK'S MOTION FOR SUMMARY |
| v. | JUDGMENT |
| GONZALEZ and BLACK, | (ECF NO. 180) |
| Defendants. | |

## I.    PROCEDURAL HISTORY

Brian Caputo ("Plaintiff") is a prisoner[1] proceeding *pro se* and *in forma pauperis* in this this civil rights action filed pursuant to 42 U.S.C. § 1983.  The parties have consented to magistrate judge jurisdiction and this action has been referred to the undersigned "for all purposes within the meaning of 28 U.S.C. § 636(c), to conduct any and all further proceedings in the case, including the trial and entry of final judgment."  (ECF No. 195, p. 2).

This action now proceeds on Plaintiff's claim for violation of his Fourteenth Amendment due process rights against defendant Black, for retaliation in violation of the First Amendment against defendant Gonzalez, and for excessive force in violation of the Fourteenth Amendment against defendant Gonzalez.  (ECF Nos. 93 & 195).

The deadline for filing dispositive motions passed without either party filing such a motion.  On May 23, 2019, defendant Black filed a motion for leave to file a motion for summary judgment.  (ECF No. 173).  Based on the representations in the motion, on May 30,

---

[1] Plaintiff was detained at Kern County Jail at the time of the incidents alleged in the complaint.  He is now incarcerated at USP Yazoo City.

2019, the Court found good cause to modify the schedule to a limited extent, and granted defendant Black leave to file a motion for summary judgment within two weeks. (ECF No. 177).

On June 13, 2019, defendant Black filed a motion for summary judgment. (ECF No. 180). Defendant Black moved for summary judgment on the following bases: 1) Plaintiff failed to exhaust his available administrative remedies; 2) Plaintiff failed to state a claim; 3) Defendant Black did not violate Plaintiff's Fourteenth Amendment due process rights; and 4) Defendant Black is entitled to qualified immunity. (Id. at 1-2).

On June 18, 2019, Chief District Judge Lawrence J. O'Neill, who was the presiding judge on the case at the time, issued an order striking the first and second bases of the motion for summary judgement because they were "beyond the scope of what the Court allowed in the May 30, 2019 order." (ECF No. 182, p. 3) (citation omitted).

On July 8, 2019, Plaintiff filed his opposition to the motion for summary judgment. (ECF No. 194). On July 12, 2019, defendant Black filed her reply. (ECF No. 196).

Defendant Black's motion for summary judgment is now before the Court. For the reasons that follow, the Court will recommend that defendant Black's motion for summary judgment be denied.

## II.   PLAINTIFF'S CLAIMS

In his Fourth Amended Complaint (ECF No. 43), Plaintiff alleges that on May 4, 2016,[2] at around 9:30 p.m., he had taken his evening medication when defendant Gonzalez pulled him out of pill line. Plaintiff then choked on water, and was yelled at by defendant Gonzalez, who accused Plaintiff of putting his pills in his locker. Plaintiff invited defendant Gonzalez to search his locker. Defendant Gonzalez declined. Defendant Gonzalez then stated "I am not turning on the T.V. and phones because Plaintiff (self) for the night."

Plaintiff asked for a grievance form, and defendant Gonzalez said "'you want a

---

[2] According to defendant Black, the incident actually occurred on May 5, 2016. (ECF No. 180-5, pgs. 3-4, ¶ 7). The exact date of the incident is not relevant to the resolution of this motion for summary judgment. However, the Court will refer to the incident as having occurred on May 5, 2016.

grievance? There it is' (or I got your grievance form right here)." Defendant Gonzalez then pulled Plaintiff by his arm and shirt collar into the wall four times, before throwing Plaintiff to the floor and driving his knee into Plaintiff's lower back. Plaintiff was never given a grievance form. After that incident Plaintiff had trouble sleeping or being around any officers. As a result of the incident, Plaintiff was put in disciplinary isolation from May 4, 2016, through November 22, 2016.

The Court screened Plaintiff's complaint, and all claims and defendants were dismissed, "except for Plaintiff's claims for violation of his Fourteenth Amendment due process rights against defendant Black and Doe Defendant(s), for retaliation in violation of the First Amendment against defendant Gonzalez, and for excessive force in violation of the Fourteenth Amendment against defendant Gonzalez."[3]  (ECF No. 93, p. 2).

On July 10, 2019, the remaining Doe Defendants were dismissed pursuant to Federal Rule of Civil Procedure 4(m).  (ECF No. 195).

This action now proceeds only on Plaintiff's claim for violation of his Fourteenth Amendment due process rights against defendant Black, for retaliation in violation of the First Amendment against defendant Gonzalez, and for excessive force in violation of the Fourteenth Amendment against defendant Gonzalez.  (ECF Nos. 93 & 195).

Plaintiff's claim against defendant Black is proceeding based on the allegation that he was placed in disciplinary isolation without receiving a due process hearing.  (ECF No. 81, p. 7; ECF No. 93).

### III.    DEFENDANT BLACK'S MOTION FOR SUMMARY JUDGMENT

#### a.    Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there

---

[3] The Fourteenth Amendment claim was originally proceeding only against Doe Defendants, but Plaintiff identified defendant Black as one of the Doe Defendants and defendant Black was substituted into the case (ECF No. 75).

is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. "[C]onclusory allegations unsupported by factual data" are not enough to rebut a summary judgment motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989), citing Angel v. Seattle-First Nat'l Bank, 653 F.2d 1293, 1299 (9th Cir. 1981).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record… from which a reasonable inference… may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he

evidence of the non-movant is to be believed…." <u>Anderson</u>, 477 U.S. at 255.  Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

### a.  Defendant Black's Position

Defendant Black argues that summary judgment should be granted because Plaintiff's due process rights were not violated, and even if they were, it was not the result of any action or inaction by defendant Black.  (ECF No. 180, p. 15).  There was no discipline imposed on Plaintiff.  (ECF No. 180, p. 17).  Moreover, even if Plaintiff was placed in Administrative Segregation ("Ad Seg") for disciplinary reasons, Plaintiff's placement did not involve a protected liberty interest.  (<u>Id.</u> at 16).

Additionally, "[s]upervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged."  (<u>Id.</u> at 17) (alteration in original) (citations and internal quotation marks omitted).

Defendant Black argues that the undisputed facts reveal that defendant Black is only a supervisor.  (<u>Id.</u> at 18).  Defendant Black "was not on duty at the time of the Incident and did not participate in the decision to move Caputo to Ad. Seg.  Even if there was discipline imposed, which Black disputes, Black was not involved in any manner and was not aware of the discipline.  Moreover, Black did not formulate any policy through which Caputo was disciplined."  "At no point on or after May 5, 2016 was Black involved in assigning or keeping Caputo in any housing assignment, including Ad. Seg.  At no point on or after May 5, 2016 was Black involved in assigning or keeping Caputo in any housing assignment, including Ad. Seg., as punishment and/or discipline for any act or failure to perform any act.  Black did not personally provide any orders or directions related to discipline of Caputo to any KCSO

employee, any inmate or anyone else as a result of the May 5, 2019 Incident." (Id. at 10) (citations omitted). Thus, summary judgment is proper.

Finally, Defendant Black argues that she is entitled to qualified immunity. "There is simply no way that Black could have believed that her conduct … was unlawful. Even if Caputo was to contend that Black knew and participated in the discipline and she sent Caputo to Ad. Seg., the immunity would still apply since it accounts for the fact that officers may make reasonable mistakes, and be uncertain as to how the relevant legal doctrine will apply to the case." (Id. at 19).

   b. Plaintiff's Position

Because defendant Black, by her own admission, "is responsible for the overall cleanliness of the facility, and for providing necessary equipment and supplies," defendant Black "is responsible for the feces and urine Plaintiff was forced to live in, breathing it in on a 24/7 basis, which constitutes cruel and unusual punishment." (ECF No. 194, p. 3).

As to the Fourteenth Amendment due process claim, Plaintiff argues that "[p]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." (Id. at 4) (citation and internal quotation marks omitted). "Pre-hearing detention may be justified as long as a hearing complying with the requirements of Wolff v. McDonnel is held within a reasonable time after the detention begins." (ECF No. 194, p. 4). However, Plaintiff, a federal pretrial detainee, "was never afforded any due process hearing, and as 'no charges were filed,' should not have been kept in segregation." (Id. at 5).

As to defendant Black's argument that she is entitled to qualified immunity, Plaintiff argues that the detention facilities were not in compliance with their agreement with the United States Marshals Service because they violated the civil rights of a contract inmate. (Id. at 7). Defendant Black has been employed by the Kern County Sherriff's Office for twenty-two years. (Id.). "If after 22 years one doesn't know their respective duties along with the terms and conditions of an agreement with the U.S. Marshal's Service and the Bureau of Prisons to house federal inmates at their Detention Facilities the individual would seem incompitant

[sic]." (Id.).  Therefore, "Defendant Black is not entitled to qualified immunity."  (Id.).

c.  Legal Standards

a.  *Supervisory Liability*

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and alterations omitted).

b.  *Fourteenth Amendment Due Process*

A pretrial detainee "may not be punished without a due process hearing."  Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996).  "[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule."  Id. (footnote omitted).

c.  *Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. <u>Pearson</u>, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" <u>Reichle v. Howards</u>, 132 S. Ct. 2088, 2090 (2012) (quoting <u>Al–Kidd</u>, 563 U.S. at 741) (alteration in original). This immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

d. <u>Analysis</u>

At the outset, the Court notes two issues. First, Plaintiff argues that "Defendant Black is responsible for the feces and urine Plaintiff was forced to live in, breathing it in on a 24/7 basis, which constitutes cruel and unusual punishment." (ECF No. 194, p. 3). However, this case is not proceeding on an Eighth Amendment or Fourteenth Amendment conditions of confinement claim against defendant Black. Even if the Court construed Plaintiff's opposition as including a request for leave to amend to add that claim now, it would be denied. Plaintiff's complaint has already been amended numerous times (the case is proceeding on Plaintiff's Fourth Amended Complaint). While the Court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), Plaintiff has not provided an explanation as to why he waited until approximately three weeks before the telephonic pretrial confirmation hearing to attempt to add a claim.[4] Given the late stage of the case, any amendment of claims would be highly prejudicial to all parties.

Second, in defendant Black's reply, she continues to argue that she is entitled to

_____

[4] Plaintiff also alleges "malicious defense," and complains about a couple of discovery issues. (ECF No. 194, pgs. 7-8). However, the discovery deadline has long since passed. Moreover, the issues Plaintiff complains of are not relevant to the resolution of the pending motion for summary judgment.

summary judgment because Plaintiff failed to exhaust his administrative remedies and because Plaintiff's complaint fails to state a valid claim against her. (See, e.g., ECF No. 196, p. 1). As these grounds have been stricken from the motion for summary judgment "as beyond the scope of what the Court allowed in the May 30, 2019 order," (ECF No. 182, p. 3), the Court will not address these arguments.

As to Plaintiff's Fourteenth Amendment claim against defendant Black, summary judgment is not appropriate.

Defendant Black argues that she is entitled to summary judgment because Plaintiff was not disciplined for the incident. In support of her position, defendant Black submits her declaration, in which she states: "Based upon my review of CJIS and KCSO disciplinary records, I am informed and believe that Caputo was not disciplined for the Incident." (ECF No. 180-5, p. 8, ¶ 19). While Plaintiff was placed in Ad Seg, "it was not for discipline." (Id. at ¶ 20).

Based on the evidence presented, it appears to be undisputed that Plaintiff was placed into Ad Seg almost immediately after the May 5 incident, in which Plaintiff was accused of resisting an officer. (See, e.g., ECF No. 180-6, pgs. 2-4; ECF No. 180-12, p. 6). Additionally, Plaintiff has stated, under penalty of perjury, that he was retained in "disciplinary isolation" until November 22, 2016. (ECF No. 43, p. 5).[5] While in "segregated confinement" Plaintiff "had no access to [his] dayroom, telephone, programs and services," and was "unable to attend any kind of educational class…." Transcript of Plaintiff's Deposition, April 11, 2019, at 13:25-14:5. Based on this evidence a jury could reasonably find that Plaintiff was placed and retained in Ad Seg as a form of punishment.

Moreover, while it is not her burden to show why Plaintiff was placed in Ad Seg, defendant Black does not present evidence showing that Plaintiff was placed in Ad Seg after the incident for non-disciplinary reasons. Instead, she states:

Based upon my review of CJIS and the Inmate Movement Logs, I

---

[5] Plaintiff's Fourth Amended Complaint is verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).

am informed and believe that Caputo was housed in a number of different cells and housing areas, often based upon Requests submitted by Caputo. An example is Caputo's Request July 8, 2016, in which he inquired about recorded video of his movements. Caputo's Request received by Sergeant J. Luevanos, Luevnaos determined Caputo should be housed in an area that had 24 hour recorded video surveillance. Luevanos completed a detailed report, Inc- 16-09549 of Caputo's movement to Pretrial. At that time, the Max-Med Facility video surveillance was capable of live monitoring, not recording. (A true and correct copy of the Request and attached Response, along with the subsequent Incident Report are collectively attached hereto and incorporated by reference as Exhibit C6.)

(ECF No. 180-5, p. 8, ¶ 21). The example provided by defendant Black occurred over two months after the alleged disciplinary segregation began. She does not mention why Plaintiff was placed in Ad Seg on May 5, 2016, or why he was retained there until he submitted his request.

Given the closeness in time between the incident and Plaintiff's placement into Ad Seg, the duration of the segregation, and the lack of evidence showing that the placement was for non-disciplinary reasons, and viewing the evidence in the light most favorable to Plaintiff, the Court finds there is a genuine dispute of material fact regarding whether Plaintiff was punished.

Turning to defendant Black's argument that she should be granted summary judgment because Plaintiff's placement in Ad Seg did not involve a protected liberty interest, this argument fails because defendant Black relies on law that applies to convicted prisoners, (ECF No. 180, pgs. 16-17), but Plaintiff appears to have been a pretrial detainee.

"The Eighth Amendment's prohibition of cruel and unusual punishments applies only after conviction and sentence. Pretrial detainees are not convicted prisoners. Therefore, pretrial detainees are accorded no rights under the Eighth Amendment. Instead, their rights arise under the Due Process Clause of the Fourteenth Amendment." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citations and internal quotation marks omitted). Here, Plaintiff was not sentenced until November 7, 2016. E.D. CA, Case No. 1:14-cr-00041, ECF No. 93. Thus, it appears that Plaintiff was a pretrial detainee until November 7, 2016. As pretrial detainees "may not be punished without a due process hearing," Mitchell, 75 F.3d at 524, and as there is

10

a genuine dispute of material fact regarding whether Plaintiff was punished while he was a pretrial detainee, defendant Black's argument that she should be granted summary judgment because Plaintiff's placement in Ad Seg did not involve a protected liberty interest fails.[6]

The Court next turns to defendant Black's argument that, even if Plaintiff was punished, she was not involved in placing or retaining Plaintiff in Ad Seg.

It is undisputed that defendant Black was not responsible for placing Plaintiff into Ad Seg after the May 5 incident. However, it is also undisputed that, at the relevant times, defendant Black "receive[d] and review[ed] grievances and request slips generated by inmates and incident reports including disciplinary hearings and sanctions," that she was "designated as the approver of disciplinary sanctions for inmates housed in the facility [she is] assigned to," and that she reviewed disciplinary sanction appeals. (ECF No. 180-5, pgs. 2-3, ¶ 3).

While defendant Black cannot be held liable merely because she was a supervisor, she can be held liable for her "acquiescence in the constitutional deprivations of which the complaint is made," Larez, 946 F.2d at 646 (citation, internal quotation marks, and alterations omitted), and there is evidence that this occurred here. It is undisputed that Plaintiff wrote a grievance to defendant Black, which was received on June 18, 2016. (ECF No. 180-8, p. 3). In the grievance, among other things, Plaintiff stated:

> Also, since I was/am being punished by getting put in "the hole" for over 30 days and continue to be punished for his assault, I would like to be moved back into Dorm 3. Otherwise other actions will be taken/followed up on the insodent [sic]. Thank you. What I am grieving is the fact I am being punished for nothing, I haven't broken any "title" rules; if so, what title is it where an inmate isn[']t allowed to choke on water being pushed out/rushed out of the pill line? Also, there was no reason to have been moved and would like to go back to dorm 3. Includeing [sic], how is it legal for a sheriff Deputy to be able to getaway [sic] with breaking the law and his punishment is "Paid Leave?"

(Id.).

---

[6] The Court notes that defendant Black does not present evidence, or even argue, that Plaintiff received a due process hearing prior to being punished. Additionally, Plaintiff stated in his deposition that he was "placed and kept in isolation cells without any due process rights, any hearing, any kind of formal charges being made." Transcript of Plaintiff's Deposition at 15:1-3.

In response, defendant Black wrote:

> I have received and reviewed your grievance (#4015) dated 6/11/16 regarding allegations of an assault by staff and your classification/housing.
>
> Your allegation of an assault by staff is being handled as a personnel matter. You will be contacted by the assigned investigator.
>
> Your classification and housing is reviewed every ten days by the classification unit. You may submit a request for reclassification to the classification unit.

(Id. at 2).

While defendant Black responded to Plaintiff's request to be moved, she appears to have ignored his allegations that he was being punished even though he did not violate any rules. Additionally, it is undisputed that defendant Black was aware of the May 5 incident because she "was assigned to complete the pre-investigation of the Incident." (ECF No. 180-5, p. 4, ¶ 10).

Given that defendant Black was aware of the incident, that defendant Black was the approver of disciplinary sanctions, that Plaintiff told defendant Black he was being punished as a result of the incident even though he did not do anything wrong, that defendant Black did not respond to Plaintiff's allegation that he was being punished even though he did not do anything wrong, and that, as discussed above, there is evidence that Plaintiff was punished in violation of his constitutional rights, a jury could reasonably find that defendant Black acquiesced to the alleged constitutional deprivation.

Finally, the Court turns to defendant Black's argument that she is entitled to qualified immunity. In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. Pearson, 555 U.S. at 232.

As discussed above, there is evidence in the record that Plaintiff was subjected to punishment (placement and retention in segregated confinement, where he lost access to certain

privileges) without receiving a due process hearing, which is a violation of the Fourteenth Amendment. There is also evidence in the record that defendant Black was one of the individuals responsible for the violation. Thus, the first prong is satisfied.

As to the second prong, in 1996, the Ninth Circuit Court of Appeals addressed a case where a pretrial detainee was allegedly subjected to disciplinary segregation. The Ninth Circuit held that a pretrial detainee "may not be punished without a due process hearing." <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 524 (9th Cir. 1996). "[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule." <u>Id.</u> (footnote omitted). Thus, it was clearly established at the time defendant Black reviewed Plaintiff's grievance that Plaintiff, a pretrial detainee, could not be punished unless he was first provided with a due process hearing to determine whether he violated a rule.

Therefore, defendant Black is not entitled to summary judgment on the issue of qualified immunity.

## IV.     CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that defendant Black's motion for summary judgment (ECF No. 180) is DENIED.

IT IS SO ORDERED.

Dated:   __July 25, 2019__                              /s/ _Erica P. Grosjean_
                                                        UNITED STATES MAGISTRATE JUDGE